Dolores Cupp, Plaintiff-Petitioner, *v.* Walter R. Nelson *et al.,*
Defendants-Respondents.

(No. 55061;

First District—March 30, 1972.

Blumenthal & Schwartz, of Chicago, (William Greene and Richard Lee Stavins, of counsel,) for petitioner.

Rizzi & Greenfield, of Chicago, (Dom J. Rizzi and Frank M. Greenfield, of counsel,) for respondents.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought this action to recover for personal injuries suffered as a result of a fall on defendants' property. A jury verdict in the amount of $16,000 was returned in her favor and judgment was entered on that verdict. Subsequently, after a hearing on defendants' post-trial motion, the court vacated the verdict and judgment and granted defendants a new trial. Pursuant to Supreme Court Rule 306 plaintiff petitioned for and was granted leave to appeal to this court.

On appeal plaintiff contends that the court erred in allowing defendants' post-trial motion. Specifically, she urges, in contradistinction to the belief of the trial judge at the time he vacated the verdict and judgment, that the jury was properly instructed and that there was no other ground upon which a new trial could have been granted.

In her complaint plaintiff alleged in substance that on December 12, 1963, she was a tenant in an apartment building owned and controlled by defendants; that she was in the exercise of ordinary care and caution for her own safety; that the defendants had a duty to maintain the premises in a reasonably safe condition so as to avoid injury to persons egressing from said building; that defendants were careless and negligent in several respects including their allowance of ice and snow to remain on the outside stairway, their maintenance of the outside stairway in an icy and slippery condition, and their failure to properly place abrasive materials on the outside stairway and that plaintiff slipped, fell and was injured as a direct and proximate result of defendants' negligence. Specifically, it was alleged that defendants were negligent in covering some but not all of the steps with rock salt. Defendants' answer,

*inter alia,* admits that they owed plaintiff the duty of maintaining the premises in a reasonably safe condition to avoid injury to persons egressing from the building.

The following summary of evidence relates only to the facts surrounding plaintiff's injury as no question is raised on appeal with respect to the nature and extent of her injuries.

On December 12, 1963, plaintiff lived at 6717 North Sheridan Road in Chicago. At approximately 8:15 A.M. she, while wearing boots with flat heels, left the apartment with her mother. They proceeded to the top of the outside stairs where they noticed that, although snow had fallen the night before, the porch and stairs had been swept clear of all but traces of snow with ice underneath and that rock salt had been scattered on the porch and steps. The two women then proceeded down the stairs with plaintiff's mother on the far left-hand side holding the cement railing and the plaintiff near the center of the stairs supporting her mother. The two women walked down the stairs one step at a time, and as they proceeded they noticed the footing was "crunchy." As they placed their feet on the last stair plaintiff slipped and fell backwards, striking her arms and back against the stairs. After plaintiff fell, she noticed that the last stair was smooth with ice and bore no evidence of rock salt.

Plaintiff's evidence relating to the presence of ice and snow on the stairs was controverted both by the testimony of the janitor of the building who stated that shortly after 6:30 A.M. the steps were cleared of all snow, moisture and ice were completely clear of snow when he went to work at approximately 7:45 A.M. Additionally, defendant himself testified that he inspected the stairs at approximately 9:30 A.M. and found them to be free of snow and ice. Defendant did, however, testify that rock salt was kept for the janitor's use in clearing ice but that the janitor was instructed to use the salt "sparingly." After judgment on the jury's verdict was entered, defendants moved for a new trial.

In granting the new trial the judge indicated that he believed he had erred in refusing to give the following instruction tendered on behalf of defendants (identified throughout the briefs as defendants' Instruction No. 1):

"It is the law in Illinois that a property owner is not liable for injury sustained by a tenant in a fall on an icy walk maintained by the property owner for the use of his tenants where the condition is a natural one and not caused or aggravated by the property owners; however, a property owner may be liable for injury sustained by a tenant who falls and is injured as a result of snow and ice which

did not accumulate from natural causes but as a result of the property owner doing something which causes an unnatural or artificial accumulation of the ice and snow.

Mere removal of snow which may leave a natural ice formation remaining on the premises does not of itself constitute negligence.

Whether or not the defendant in his removal of the snow caused or aggravated the condition of these premises is for you to decide."

*Opinion*

■■ The often repeated standard for use in determining liability in ice and snow cases is that a property owner is not liable for injuries sustained as a result of a natural as opposed to an unnatural accumulation of ice and snow. (*See generally Riccitelli v. Sternfeld* (1953), 1 Ill.2d 133, 135, 115 N.E.2d 288, 290; *Zide v. Jewel Tea Co.* (1963), 39 Ill.App.2d 217, 222—223, 188 N.E.2d 383, 385—386 and *Byrne v. Catholic Bishop of Chicago* (1971), (Ill.App.2d), 266 N.E.2d 708, 711.) But, where the property owner attempts to remove the natural accumulations of snow he is charged with the duty of exercising ordinary care in accomplishing his task. (*Sims v. Block* (1968), 94 Ill.App.2d 215, 222, 236 N.E.2d 572, 575.) It has been unsuccessfully urged in some ice and snow cases that the existence of a landlord-tenant relationship between the defendant and plaintiff creates a duty on the part of the landlord to clear common passageways of the natural accumulations of ice and snow. *See Cronin v. Brownlie* (1952), 348 Ill.App. 448, 456, 109 N.E.2d 352, 356. *But see Durkin v. Lewitz* (1954), 3 Ill.App.2d 481, 486—491, 123 N.E.2d 151, 154—157.

■■ In either instance, whether plaintiff bases her claim for recovery on defendants' creation of an unnatural accumulation of ice and snow or upon the landlord-tenant relationship, plaintiff must, as a prerequisite to recovery, establish that defendants owed her a duty which was breached. In the instant case, however, it is unnecessary for us to further analyze the ice and snow cases to determine whether or not plaintiff herein had established the requisite duty, as defendants, in their answer, admitted that it was their duty to maintain the premises in a reasonably safe condition so as to avoid injury to plaintiff as she egressed from the building. Additionally, plaintiff's instruction number nine, to which no objection was raised, stated:

"It was the duty of Defendants, WALTER R. NELSON and WENDLA NELSON, in undertaking to remove ice and/or snow from the outside stairway to use ordinary care to avoid causing injury to the tenants in the building including the Plaintiff, DOLORES CUPP, herein."

Thus, the only issues remaining for the jury to determine related to

whether or not defendants had been negligent in carrying out that duty by the manner in which the rock salt was spread on the steps.

■■■ Therefore, it would have been improper for the court to have given defendants' instruction number one to the jury for it related almost entirely to the question of liability resulting from injuries incurred as a result of a fall on a natural as opposed to an unnatural accumulation, or with the removal of snow, which also was not an issue in the case. Paragraph two of the instruction, the only part which related to the question of negligence pertinent to this case, was already adequately covered by other instructions. We believe that when the instructions are considered as a whole, as they should be, they properly and adequately instruct the jury in this case.

Thus, the trial court did not err when it originally refused defendants' instruction number one, but the court did abuse its discretion when it granted a new trial premised on this alleged error.

■■ Alternatively, defendants urge that the order granting a new trial should be affirmed on the ground of the alleged improper actions of plaintiff's counsel, in calling the jury's attention to the fact that insurance may have been involved in the case. While it is improper for plaintiff to inform the jury that defendants are insured against liability on a judgment that may be entered against them, (see generally Kavanaugh v. Parret (1942), 379 Ill. 273, 277, 40 N.E.2d 500, 502, any references to insurance in the instant case did not necessitate the granting of a new trial.

■■■ In pursuit of their argument, defendants cite five instances wherein they contend that the jury's attention was improperly directed to the proposition that the accident may have been covered by insurance. Examination of those instances reveals that the first mention of insurance was made through direct examination of a defense witness (defendants' son) by defense counsel. (See generally, Cooper v. Safeway Lines, Inc. (1940), 304 Ill.App. 302, 325, 26 N.E.2d 632, 642.) The second instance arose from a series of questions asked by plaintiff's attorney during cross-examination of defendants' son but no objections were raised thereto thus not preserving the issue for review. (See Pomrenke v. Betzelberger (1963), 41 Ill.App.2d 307, 315—316, 190 N.E.2d 522, 527.) The third instance arose also on cross-examination of defendants' son as a result of a non-responsive answer to a legitimate question. (See Williams v. Consumers Co. (1933), 352 Ill. 51, 55, 185 N.E. 217, 219; Schaffer v. Dorsey (1966), 70 Ill.App.2d 390, 392, 217 N.E.2d 19, 20 and Stewart v. DuPlessis (1963), 42 Ill.App.2d 192, 199, 191 N.E.2d 622, 626.) The final two alleged improper references to insurance came during plaintiff's attorney's rebuttal argument, but because those re-

marks were equivocal and made only in response to argument by defense counsel no reversible error resulted. (*See generally Pomrenke v. Betzelberger, supra.*) Additionally, the jury was instructed to consider the argument of counsel only to the extent that it was founded upon evidence.

■■ In considering all of the matters raised by defendants in this regard either singly or together we fail to find calculated and repeated attempts on the part of plaintiff's counsel to elicit comments about insurance for the purpose of prejudicing the jury against defendants thereby necessitating a new trial. *Williams v. Consumers Co., supra,* and *Fitzgerald v. Brown* (1967), 86 Ill.App.2d 289, 293, 230 N.E.2d 80, 82.

The order granting defendants' motion for a new trial is reversed, and the cause is remanded with directions to enter judgment on the verdict of the jury.

Reversed and remanded with directions.

DRUCKER and ENGLISH, JJ., concur.